No. 103,509

S<small>TATE OF</small> K<small>ANSAS</small>, *Appellee*, v. L<small>ESTER</small> L<small>AWSON</small>, *Appellant*.
(297 P.3d 1164)

Opinion filed April 5, 2013.

*Meryl Carver-Allmond*, of Capital Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Cheryl A. Marquardt*, assistant county attorney, argued the cause, and *Todd L. Thompson*, county attorney, *Steve Six*, former attorney general, and *Derek Schmidt*, attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Lester Lawson appeals his convictions and sentences on two counts of aggravated criminal sodomy of a child less than 14 years of age, in violation of K.S.A. 21-3506(a)(1). Lawson raises four issues in this appeal, claiming that (1) his right to counsel under the federal and state constitutions was violated when he was interrogated without his attorney being present and the resulting statements were admitted at trial; (2) the district court's failure to instruct the jury on the essential element of the defendant's age resulted in constitutional and statutory violations that require the imposition of a grid sentence; (3) the district court erroneously imposed a mandatory minimum sentence of 28 years; and (4) he should be parole eligible after 20 years, pursuant to K.S.A. 22-3717(b)(2). Finding that law enforcement officers denied Lawson his statutory right to the assistance of counsel at a critical stage of the proceedings, we reverse and remand for a new trial.

## FACTUAL AND PROCEDURAL OVERVIEW

For a period of time during 2006-2007, Lawson and his wife had Brian Kennedy living in their home, together with Kennedy's girlfriend and her two children, K.L. (a girl) and J.L. (a boy). By March 4, 2008, Kennedy, his girlfriend, and her children had moved into their own house, which the Federal Bureau of Investigation (FBI) searched on that date as part of an investigation into Internet child pornography. Child pornography was found on Kennedy's computer, and the children were interviewed at the police station. J.L. said that Kennedy had performed oral and anal sex with him, which eventually led to Kennedy's conviction for that conduct. But during the interviews, after talking with K.L., J.L. eventually made the same allegation against Lawson, *i.e.*, that Lawson had oral and anal sex with him at Lawson's house.

Lawson was arrested that same day. After being advised of his *Miranda* rights, Lawson denied having sex with J.L. and offered that K.L. might be making up the accusations because she was jealous of Lawson's positive relationship with J.L. The State charged Lawson with two counts of aggravated criminal sodomy with a child under 14 years old, and the court conducted a first appearance on March 10, 2008. Apparently, there is no transcript of the first appearance hearing, but the judge's notes suggest that a defense attorney, Michael Mogenson, was present on behalf of Lawson. Further, at 10:50 a.m. that day, Lawson's application for court-appointed counsel was filed of record.

The following day, March 11, Officer James Bridges took Lawson from his jail cell and transported him to the Leavenworth Police Department. Lawson would later say that he thought that the officer, dressed in coat and tie, was his court-appointed attorney, and Officer Bridges would assert that he was unaware that Lawson had an attorney. At the police station, Officer Bridges gave Lawson oral and written *Miranda* warnings and Lawson signed the bottom of the waiver form. Then, the officer conducted a polygraph examination and interview. During the interrogation, Lawson admitted to sexual contact with J.L. on multiple occasions in 2007, including one instance in which J.L. had performed oral sodomy on Lawson.

In June 2008, Lawson's attorney filed a motion requesting a competency determination. Lawson was sent to Larned State Hospital, where doctors found him competent to stand trial. But the examination report noted that Lawson's intellectual functioning was "within the low average range," that he was "an individual with poor judgment capability," and that he showed a low average "ability to abstract information."

Lawson's attorney challenged the admissibility of Lawson's uncounseled statements that were given during the polygraph examination and interview, which the State originally intended to use for rebuttal purposes only. The State's announcement on the morning of trial, May 4, 2009, that it intended to use the statements in its case-in-chief prompted the court to conduct a *Jackson v. Denno* admissibility hearing before the trial commenced. At that hearing,

the State presented Officer Bridges' testimony and the *Miranda* rights waiver form. The court ruled that Lawson's statements were admissible but that the State could not allow the jury to know that they were obtained in connection with a polygraph examination.

The district court's jury instructions failed to advise the jury that it would have to find that Lawson was over 18 years of age. But Lawson did not object to that omission. The evidence elicited at trial included several references to Lawson's age, including testimony that he was 39 years old on March 4, 2008, the date on which he was taken into custody.

The jury convicted Lawson on both counts of aggravated criminal sodomy with a child under 14 years of age under K.S.A. 21-3506(a)(1). Pursuant to Jessica's Law, under K.S.A. 21-4643(a)(1)(D), each conviction for aggravated criminal sodomy "shall be sentenced to a term of imprisonment for life with a mandatory minimum term of imprisonment of not less than 25 years." The court ordered that the life sentences were to be served concurrently but inexplicably declared that Lawson should not be parole eligible for 28 years. Lawson perfected his appeal of the convictions and sentences.

The parties originally argued the case before this court on April 11, 2012. In June 2012, the matter was set for reargument on October 3, 2012, and the parties were directed to submit supplemental briefs focusing principally on the effect of K.S.A. 22-4503(a) on the suppression issue.

## DENIAL OF DEFENDANT'S MOTION TO SUPPRESS POLYGRAPHED STATEMENT

*Standard of Review*

An appellate court reviews the district court's decision on a motion to suppress using a bifurcated standard. Without reweighing the evidence, the district court's findings are reviewed to determine whether they are supported by substantial competent evidence. Then the ultimate legal conclusion regarding the suppression of evidence is reviewed using a de novo standard. *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007). When the facts material to a trial court's decision on a motion to suppress evidence

are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Fitzgerald*, 286 Kan. 1124, 1126, 192 P.3d 171 (2008).

*Analysis*

On the morning of trial, May 4, 2009, the trial court, noting that the State had changed its position about offering Lawson's polygraph interview statements in its case-in-chief, hastily called a *Jackson v. Denno* hearing to determine the admissibility of the statements. See *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). After hearing the testimony of Officer Bridges and viewing a copy of the *Miranda* waiver form, the district court ruled that the statements were admissible. The trial judge commented that he thought there was a bright-line rule that once a defendant had an attorney, there could be no questioning without consent. But then the court stated that it had looked at some cases which held that statements taken without the benefit of existing counsel were not automatically excluded "as long as there is a clear and thorough review of the right to remain silent." The only cases mentioned by the district court in making its ruling on the morning of trial were "the Edward case versus Arizona" and "State versus Pursley, 238 Kan. 253."

Actually, with respect to a person's right to counsel under the Sixth Amendment to the Constitution of the United States, as applied to the states through the Fourteenth Amendment, the district court's first thoughts were correct. A bright-line rule did exist. On the date of Lawson's trial, *Michigan v. Jackson*, 475 U.S. 625, 634-36, 106 S. Ct. 1404, 89 L. Ed. 2d 631 (1986), was still good law with respect to applying the holding from *Edwards v. Arizona*, 451 U.S. 477, 484-87, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981), to a Sixth Amendment challenge to the admissibility of a confession. *Jackson* clearly stated: "We thus hold that, if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." 475 U.S. at 636.

Regardless of Mogenson's role in the first appearance, Lawson definitely asserted his right to counsel at a court proceeding when he submitted an application for court-appointed counsel at the first appearance. The police initiated its interrogation of Lawson the day *after* he asserted his right to counsel. It did not matter under *Jackson*'s rule whether Officer Bridges knew of that prior assertion when he initiated the polygraph interrogation, because "[o]ne set of state actors (the police) may not claim ignorance of defendants' unequivocal request for counsel to another state actor (the court)." *Jackson*, 475 U.S. at 634. Accordingly, the trial court was simply wrong in its belief that the caselaw at that time allowed a law enforcement officer to initiate an uncounseled interrogation after a defendant had invoked the right to counsel at a court hearing. *Jackson* did not say that a violation of a defendant's Sixth Amendment right to counsel was excused if the officer was clear and thorough in explaining the defendant's Fifth Amendment right to remain silent. To the contrary, no waiver was possible under *Jackson* without the assistance of counsel. Prior Kansas cases, such as *State v. Pursley*, 238 Kan. 253, 710 P.2d 1231 (1985), simply could not override that federal constitutional protection. See *State v. Scott*, 286 Kan. 54, Syl. ¶ 25, 183 P.3d 801(2008) (Article VI of United States Constitution makes United States Supreme Court's interpretations of that Constitution controlling upon state courts).

Shortly after Lawson's trial, the United States Supreme Court jettisoned its longstanding rule from *Jackson*. *Montejo v. Louisiana*, 556 U.S. 778, 797, 129 S. Ct. 2079, 173 L. Ed. 2d 955 (2009) ("*Michigan v. Jackson* should be and now is overruled."). *Montejo* not only held that it is possible for a defendant who is represented by counsel to waive his or her Sixth Amendment right to the assistance of that attorney without consultation, but that the waiver could be accomplished through the defendant's waiver of *Miranda* rights. Interestingly, the *Montejo* majority acknowledged that a *Miranda* waiver is a relinquishment of the Fifth Amendment right to remain silent, not the Sixth Amendment right to counsel. But the majority opined:

"It is true, as Montejo points out in his supplemental brief, that the doctrine established by *Miranda* and *Edwards* is designed to protect Fifth Amendment,

not Sixth Amendment, rights. But that is irrelevant. What matters is that these cases, like *Jackson*, protect the right to have counsel during custodial interrogation—which right happens to be guaranteed (once the adversary judicial process has begun) by *two* sources of law. Since the right under both sources is waived using the same procedure, [citation omitted], doctrines ensuring voluntariness of the Fifth Amendment waiver simultaneously ensure the voluntariness of the Sixth Amendment waiver." 556 U.S. at 795.

The State argues that *Montejo* is the "controlling case" on Lawson's suppression issue, albeit that case was decided after the district court's ruling in this case. But *cf. State v. Berry*, 292 Kan. 493, 514, 254 P.3d 1276 (2011) (general rule that change in law applies to cases pending on direct review). The State describes *Montejo*'s holdings as follows:

"The U.S. Supreme Court held in *Montejo* that a defendant may waive the right to counsel for the purpose of a custodial interrogation, even if they are represented by counsel at the time of the law enforcement interview. Additionally, the defendant need not be counseled in advance regarding their right to counsel in order to determine whether they want to waive that right. Finally, the U.S. Supreme Court held- that Miranda warnings are sufficient to advise a defendant of their right to counsel and a defendant's waiver after Miranda warnings will be considered to be a knowing and intelligent waiver."

Lawson's initial brief conceded that the Kansas Supreme Court is bound by *Montejo*'s interpretation of the Sixth Amendment, notwithstanding his belief that the majority opinion in that case was poorly reasoned and wrongly decided. Consequently, Lawson pointed us to our state constitution, specifically § 10 of the Kansas Constitution Bill of Rights, which provides, in relevant part, that "[i]n all prosecutions, the accused shall be allowed to appear and defend in person, or by counsel." Lawson argues that we should independently interpret our state constitution as fully protecting and preserving the right to counsel that Kansas citizens have possessed and relied upon for at least the quarter-century since *Jackson*. That course of action is certainly possible. This court has the authority to construe Kansas constitutional provisions independently of the manner in which federal courts interpret corresponding provisions of the United States Constitution, and we are free to interpret our state law in a manner that will "impose greater restrictions on police activity than those the [United States Su-

preme Court] holds to be necessary upon federal constitutional standards." See *State v. Morris*, 255 Kan. 964, 981, 880 P.2d 1244 (1994) (citing to *Oregon v. Hass*, 420 U.S. 714, 719, 95 S. Ct. 1215, 43 L. Ed. 2d 570 [1975]).

But, at least for the past half-century, this court has generally adopted the United States Supreme Court's interpretation of corresponding federal constitutional provisions as the meaning of the Kansas Constitution, notwithstanding any textual, historical, or jurisprudential differences. See Monnat & Nichols, *The Loneliness of the Kansas Constitution*, 34 J. Kan. Ass'n Just. 10 (Sept. 2010). But see *State v. McDaniel & Owens*, 228 Kan. 172, 184-85, 612 P.2d 1231 (1980) (independently interpreting § 9 of the Kansas Constitution Bill of Rights). Recent cases have not provided an expanded rationale for not performing an independent analysis of the Kansas Constitution, relating simply that "we have not traditionally done so." See *State v. Scott*, 265 Kan. 1, 5, 961 P.2d 667 (1998) (citing *Murphy v. Nelson*, 260 Kan. 589, 597, 921 P.2d 1225 [1996]); see also *State v. Scott*, 286 Kan. 54, 93, 183 P.3d 801 (2008) (relating State's argument against our independent analysis of § 9 of Kansas Constitution Bill of Rights as "it has not traditionally done so"). Other cases have phrased the rationale as "this court has never extended greater protection to our citizens beyond the federal guarantees." *State v. Spain*, 269 Kan. 54, 59, 4 P.3d 621 (2000) (citing *State v. Schultz*, 252 Kan. 819, 826, 850 P.2d 818 [1993]).

Earlier, some mention was made of the aim to "achieve a consistency so that [the state constitution] shall not be taken to mean one thing at one time and another thing at another time." *State v. Nelson*, 210 Kan. 439, 445, 502 P.2d 841 (1972). Of course, this case would be the prime example of why the wholesale, automatic adoption of federal constitutional jurisprudence does not produce such desired stability in the law for Kansans. The federal jurisprudence appears to ebb and flow on the tide of political influence. See Monnat & Nichols, 34 J. Kan. Ass'n Just., p. 14 n.20 (United States Supreme Court has overruled prior authority in over 200 cases; with relatively recent Rehnquist Court alone accounting for over 40 overruling opinions). Likewise, allowing the federal courts

to interpret the Kansas Constitution seems inconsistent with the notion of state sovereignty.

Nevertheless, this court does not always forgo its right to independently construe our own constitution, regardless of what we may have said to the contrary. In *McDaniel*, 228 Kan. 172, Syl. ¶ 10, the Kansas Supreme Court declared that "Section 9 of the Kansas [Constitution] Bill of Rights may be invoked against an excessive or disproportionate sentence," and that "[t]he nature of a sentence as cruel or unusual encompasses duration." That declaration was significant because a then-recent United States Supreme Court decision, *Rummel v. Estelle*, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980), had held that state appellate courts were "not *required* by the 8th Amendment to question the length of prison sentences." *McDaniel*, 228 Kan. at 184. In other words, *McDaniel* found that a disproportionately long prison term could violate the Kansas Constitution, even though it would not violate the federal constitution at that particular time.

The *McDaniel* court related that "[t]he *Rummel* decision is important here because the Kansas Supreme Court has heretofore adopted a disproportionality analysis in response to United States Supreme Court decisions." *McDaniel*, 228 Kan. at 181. The court explained that, as early as 1890, the decisions of this state had suggested that § 9 of the Kansas Constitution Bill of Rights did *not* include a proportionality component, but rather the state constitutional prohibition related to the kind of punishment inflicted, not to its duration. 228 Kan. at 181. The Kansas Supreme Court first recognized a basis for reviewing an alleged disproportionate sentence in *State v. Coutcher*, 198 Kan. 282, 287, 424 P.2d 865 (1967), and ultimately fully embraced the concept in *State v. Freeman*, 223 Kan. 362, 574 P.2d 950 (1978). Relying heavily on federal precedent, *Freeman* devised "three techniques" to aid in administering the principle of disproportionality. See *McDaniel*, 228 Kan. at 183-84. Shortly thereafter, in *Rummel*, the United States Supreme Court "[retreated] from the philosophy which spawned the three techniques recited in *Freeman*." *McDaniel*, 228 Kan. at 184. But the Kansas Supreme Court refused to join in that federal retreat, declaring that "[t]he techniques applied in *Freeman* will continue

to guide our [state] constitutional inquiry." *McDaniel*, 228 Kan. at 185. In other words, having followed the United States Supreme Court into the clearing, the Kansas Supreme Court refused to follow the higher Court's dive back into the forest. That scenario resembles the case before us.

Lawson argues that we should again refuse to join the federal court in retreating from established individual rights and adopt the *Jackson* philosophy as Kansas constitutional law. He relies heavily on Justice Stevens' dissent in *Montejo* for the reasons that we should find that an invocation of the right to counsel under our state constitution cannot be subsequently waived through an uncounseled waiver of *Miranda* rights. Those reasons lean heavily on the differences between the Sixth Amendment right to counsel and the Fifth Amendment right to remain silent with respect to the protections that are to be afforded, the purposes to be accomplished, and the manner in which each right may be waived. Recently, in *State v. Appleby*, 289 Kan. 1017, 1044-50, 221 P.3d 525 (2009), we discussed the differences between invoking one's right to counsel for Fifth Amendment purposes and requesting an attorney for Sixth Amendment purposes. For instance, Fifth Amendment rights may not be anticipatorily asserted and only arise when affirmatively asserted during a custodial interrogation, albeit after assertion, all questioning on all matters must cease. The Sixth Amendment right to counsel attaches only after a prosecution has been commenced and it is offense-specific, allowing for the questioning of a represented defendant on unrelated crimes.

However, the right to counsel in Kansas is not only guaranteed by our federal and state constitutions, but rather the Kansas Legislature has specifically codified the right to the assistance of counsel in this state. Our current statute speaking to the entitlement of a defendant to the assistance of counsel is set forth in K.S.A. 22-4503, which provides in relevant part:

"(a) A defendant charged by the state of Kansas in a complaint, information or indictment with any felony is entitled to have the assistance of counsel at every stage of the proceedings against such defendant . . . .

"(b) If such a defendant appears before any court without counsel to assist and conduct the defendant's defense, it shall be the duty of the court to inform the

defendant that such defendant is entitled to counsel and that counsel will be appointed to represent the defendant if the defendant is not financially able to employ an attorney. The court shall give the defendant an opportunity to employ counsel of the defendant's own choosing if the defendant states the defendant is able to do so. If the defendant asks to consult with counsel of the defendant's own choosing, the defendant shall be given a reasonable opportunity to do so.

"(c) If it is determined that the defendant is not able to employ counsel, as provided in K.S.A. 22-4504 and amendments thereto, the court shall appoint an attorney from the panel for indigents' defense services or otherwise in accordance with the applicable system for providing legal defense services for indigent persons prescribed by the state board of indigents' defense services for the county or judicial district. A record of the proceedings provided for by this section shall be entered in the journal, and any order binding the defendant for trial or directing further detention upon the charge and the journal entry of trial and judgment shall recite the substance of such proceedings.

"(d) Counsel employed by or appointed for the defendant shall have free access to the defendant at all times for the purpose of conferring with the defendant relative to the charge, for advising the defendant respecting the defendant's plea and for the preparation of the defense, if a defense is to be made. It is the duty of an attorney appointed by the court to represent a defendant, without charge to such defendant, to inform the defendant fully of the crime charged against the defendant and the penalty therefor, and in all respects fully and fairly to represent the defendant in the action."

We need not decide today whether the right to counsel described in K.S.A. 22-4503 is constitutionally required by the right to counsel provision in § 10 of the Kansas Constitution Bill of Rights. Where a right to counsel is provided by statute, the denial of that right can result in a reversal. Cf. *Kargus v. State*, 284 Kan. 908, 916, 169 P.3d 307 (2007) (statutory right to counsel includes right to effective assistance of counsel). Here, Lawson was "charged by the state of Kansas in a complaint, information or indictment with [a] felony," and, therefore, he was "entitled to have the assistance of counsel at every stage of the proceedings against [him]." K.S.A. 22-4503(a).

The State argues that the stages of the proceedings covered by the statutory right to counsel clearly refers to the "courtroom process rather than outside of the courtroom." For support, it cites to *State v. Roach*, 223 Kan. 732, 76 P.2d 1082 (1978). There, during the course of the criminal trial, the parties agreed that the defendant would submit to a polygraph examination, and the trial was

recessed for that purpose. Defense counsel was not present for the polygraph examination, but the defendant was advised of his *Miranda* rights. On appeal, this court determined that the polygraph examination was not a critical stage of the proceedings and that the defendant had effectively waived counsel during the examination. 223 Kan. at 737-38.

*Roach* is difficult to square with the court's decision 3 years earlier in *State v. McCorgary*, 218 Kan. 358, 543 P.2d 952 (1975). McCorgary had been charged with murder, appointed an attorney, and placed in a jail cell with a police informer who had agreed to obtain information for the police about the murder, including the whereabouts of the victim's body. En route to reversing the conviction based upon the erroneous admission of the informant's testimony, *McCorgary* clarified that a criminal prosecution is commenced upon the filing of a complaint and issuance of a warrant; it declared that "[a]fter a criminal prosecution has been commenced a defendant is as much entitled to aid of counsel as at the trial itself . . . "; and then it quoted the statutory entitlement to counsel language from K.S.A. 22-4503. 218 Kan. at 361. Obviously, the *McCorgary* court construed the "every stage of the proceedings" language in K.S.A. 22-4503 to include activities outside the courtroom, *i.e.*, in the jailhouse. More to the point here, *McCorgary* specifically said that "[a] police officer seeking information under similar circumstances would be required to inform the accused of his right to counsel and not proceed further until the accused knowingly and voluntarily waived such right." 218 Kan. at 363.

*McCorgary* appears to have been more in step with the long history of the right to counsel in this state. Shortly after statehood, Kansas codified the right to counsel, as follows:

"If any person, about to be arraigned upon an indictment or information for a felony, be without counsel to conduct his defense, and be unable to employ any, it shall be the duty of the court to assign him counsel, at his request, not exceeding two, who shall have free access to the prisoner, at all reasonable hours." G.S. 1868, ch. 82, sec. 160.

Early Kansas cases interpreted this right to mean that a person is entitled to counsel " 'at every step and stage of the prosecution.' "

*State v. Oberst,* 127 Kan. 412, 417, 273 P. 490 (1928); *State v. Moore,* 61 Kan. 732, 735, 60 P. 748 (1900). The right was not " 'limited to proceedings at and subsequent to the impaneling of the jury' " but also gave a defendant who was " 'imprisoned and awaiting action by the grand jury . . . [the] right to a private interview with counsel.' " *Oberst,* 127 Kan. at 417-18 (quoting *Moore,* 61 Kan. at 734-35).

But perhaps we need look no further than *Montejo,* which the State argues should control our decision. Even the majority in *Montejo* accepted as undisputed that "the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings," and that "[i]nterrogation by the State is such a stage." 556 U.S. at 786. Although a state is permitted to expand or broaden the rights of its citizens beyond that which is required by the United States Constitution, a state may not deny, restrict, narrow, or interfere with any of the federally guaranteed constitutional rights. Given that the State-initiated polygraph examination and interview of Lawson was a critical stage of his criminal proceedings for Sixth Amendment purposes, we hold that it was likewise a stage of the criminal proceedings for purposes of his entitlement to the assistance of counsel pursuant to K.S.A. 22-4503.

But determining that K.S.A. 22-4503 entitled Lawson to the assistance of counsel at his polygraph interview does not resolve the dispositive question of whether that statutory right may be effectively waived through a Fifth Amendment *Miranda* rights waiver. To resolve that inquiry, we return to the history of our statutory right.

In 1941, the language of the right to counsel statute was expanded:

"If any person about to be arraigned upon an indictment or information for any offense against the laws of this state be without counsel to conduct his defense, it shall be the duty of the court to inform him that he is entitled to counsel, and to give him an opportunity to employ counsel of his own choosing, if he states that he is able and willing to do so. If he does ask to consult counsel of his own choosing, the court shall permit him to do so, if such counsel is within the territorial jurisdiction of the court. If he is not able and willing to employ counsel, and does not ask to consult counsel of his own choosing, the *court shall appoint counsel*

*to represent him, unless he states in writing that he does not want counsel to represent him and the court shall find that the appointment of counsel over his objection will not be to his advantage. A record of such proceeding shall be made by the court reporter, which shall be transcribed and reduced to writing by the reporter, who shall certify to the correctness of such transcript, and such transcript shall be filed and made a part of the files in the cause.* The substance of the proceedings provided for herein shall be entered of record in the journal and shall be incorporated in the journal entry of trial and judgment." (Emphasis added.) G.S. 1935, 62-1304 (1941 Supp.).

Significantly, the statute required that a waiver of counsel must be stated in writing by the defendant and that the court had to make a finding that appointing an attorney over the defendant's objection would not be to the defendant's advantage. Moreover, the court reporter was to make a record of the waiver proceedings; to transcribe that record; to certify to the correctness of the transcription; and to file the transcript in the case file. Further, the substance of the waiver proceedings was to be recorded in the court journal and incorporated in the journal entry of the trial and judgment.

In 1969, the initial version of the current statute, K.S.A. 22-4503, was enacted, and it did not contain the prior language about the waiver procedure. See L. 1969, ch. 291, sec. 3. About the same time, however, the legislature passed K.S.A. 22-3426 dealing with the record of criminal judgment and the form and content of the journal entry. See L. 1970, ch. 129, sec. 22-3426. That separate statute requires some of the same information formerly contained in the 1941 right to counsel statute. Specifically, the journal of the court is required to contain "a statement that the defendant was duly represented by counsel naming such counsel, or a statement that the defendant has stated in writing that the defendant did not want representation of counsel." K.S.A. 22-3426(a). Moreover, "[i]t shall be the duty of the court personally to examine the journal entry and to sign the same." K.S.A. 22-3426(e).

Even after the enactment of K.S.A. 22-4503, this court has indicated "that a trial court must make more than a routine inquiry to determine if a waiver of the right to counsel was knowingly and intelligently made." *State v. Martin,* 241 Kan. 732, 737, 740 P.2d 577 (1987) (citing to *State v. Daniels,* 2 Kan. App. 2d 603, 607, 586 P.2d 50 [1978]). *Martin* cited *Daniels* for the minimum stan-

dards of inquiry for the trial court judge to determine whether the defendant's waiver of counsel was an intentional waiver of a known right, made with full awareness of its effect:

"The ABA Standards Relating To the Function of the Trial Judge, § 6.6 at 84, 85 (Approved Draft, 1972), suggest the trial judge's inquiry show that the defendant:

'(i) has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;

'(ii) possesses the intelligence and capacity to appreciate the consequences of this decision; and

'(iii) comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case.'

"To that, we would suggest that the trial judge also inform the defendant (1) that defendant will be held to the same standards as a lawyer; (2) that the trial judge may not aid the defendant in his defense; and (3) that it is advisable to have a lawyer due to the specialized knowledge necessary to conduct a trial and the fact that a lawyer is trained in the law." *Daniels*, 2 Kan. App. 2d at 607-08.

See *In re Habeas Corpus Application of Gilchrist*, 238 Kan. 202, 209, 708 P.2d 977 (1985); *State v. Williams*, 226 Kan. 82, 83-84, 595 P.2d 1104 (1979).

Under that paradigm, we would hold that a defendant's uncounseled confession to a judge, via a plea of guilty, would be invalid unless the defendant had waived his or her right to counsel on the record after being given appropriate warnings by the court and after the court had assured itself that the waiver was knowingly and intelligently made and then caused all of that to be made a matter of record. We should not require anything less for an out-of-court, in-the-police-station confession to a law enforcement officer where the waiver of the defendant's statutory entitlement to the assistance of existing counsel is required. In other words, after the statutory right to counsel has attached, the defendant's uncounseled waiver of that right will not be valid unless it is made in writing and on the record in open court. A *Miranda* rights waiver form, addressing the defendant's Fifth Amendment right to remain silent, simply cannot be an adequate substitute for the waiver procedure we require of our learned trial judges.

In so holding, we are not unmindful of prior opinions of this court that arguably support the State's position. For instance, *State v. Pursley*, 238 Kan. 253, 710 P.2d 1231 (1985), upon which the district court relied, allowed the district court to admit Pursley's confession to law enforcement officers, notwithstanding the officers' knowledge that Pursley's attorney was en route to the police station at the time of the confession. In addition to being decided the year before *Michigan v. Jackson*, 475 U.S. 625, 634-35, 106 S. Ct. 1404, 89 L. Ed. 2d 63 (1986), the case was curiously based on a finding of substantial competent evidence to support the trial court's holding in a *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964), hearing, notwithstanding the opinion's prefatory declaration that the defendant "does not challenge the voluntariness of his confession," 238 Kan. at 263, which is the whole point of a *Jackson v. Denno* admissibility hearing. Nevertheless, *Pursley* simply did not consider the defendant's statutory entitlement to the assistance of counsel which must be enforced against the State notwithstanding the vagaries of federal constitutional jurisprudence.

Accordingly, we find that the district court erred in refusing to suppress the uncounseled statement Lawson made during the police-initiated interrogation after Lawson had invoked his right to the assistance of counsel under K.S.A. 22-4503. Neither the testimony of Officer Bridges nor the *Miranda* rights waiver form were sufficient evidence to establish that Lawson knowingly and intelligently waived his statutory entitlement to the assistance of counsel.

Consequently, Lawson's convictions must be reversed and remanded for a new trial. Given this result, we need not address Lawson's sentencing issues, except to note that the trial court's curious imposition of a "hard-28" life sentence did not comport with the statutory scheme. See *State v. LaBelle*, 290 Kan. 529, 532, 231 P.3d 1065 (2010) (illegal sentence includes sentence that does not conform to statutory provisions with respect to character or term of authorized punishment).

Reversed and remanded.

NUSS, C.J., LUCKERT, and BILES, JJ., concurring in the result.