(371 P.3d 941)

No. 113,211

STATE OF KANSAS, *Appellee*, v. IAN WOOLVERTON, *Appellant*.
Petition for review filed May 31, 2016.

Opinion filed April 29, 2016.

*Catherine A. Zigtema*, of Law Office of Kate Zigtema LC, of Lenexa, for appellant.

*Steven J. Obermeier*, senior deputy district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., GREEN and LEBEN, JJ.

LEBEN, J.: On first glance, it might seem the attorneys in this case got their briefcases switched. The prosecutor argues that a

misdemeanor domestic-violence offense is not a serious one, while the defendant—who was convicted of that offense—argues that it is.

The reason the case has reached us in this odd posture is that the defendant was convicted in a trial to a judge, not a jury. He now seeks a do-over on the ground that he had a constitutional right to a jury trial—one that he never agreed to waive. And whether he had a constitutional right to a jury trial depends on whether the offense is categorized as a serious or a petty offense. If it's a serious offense, then he was entitled to a jury trial under the Sixth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights. If it's a petty offense, he has no constitutionally based jury-trial right, and his conviction stands.

In this case, then, we don't use the term "serious" as we might use it in conversation. The terms "serious offense" and "petty offense" are terms of art, used in specific ways in decisions of the United States Supreme Court interpreting the Sixth Amendment. And since the Kansas Supreme Court has interpreted the jury-trial right under the Kansas Constitution identically to the United States Supreme Court's interpretation of the Sixth Amendment, we must determine whether misdemeanor domestic violence is a serious offense or a petty one based on those United States Supreme Court cases. See *State v. Carr*, 300 Kan. 1, 56, 331 P.3d 544 (2014) (noting that Kansas has not analyzed its state constitutional provision granting jury-trial rights differently than the federal provision), *rev'd in part on other grounds* 136 S. Ct. 633 (2016); *State v. Lawson*, 296 Kan. 1084, 1091, 297 P.3d 1164 (2013) (noting that Kansas has generally interpreted its state constitutional provisions identically with their federal counterparts).

We know that these phrases are terms of art from several United States Supreme Court opinions, including *Duncan v. Louisiana*, 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968); *Baldwin v. New York*, 399 U.S. 66, 90 S. Ct. 1886, 26 L. Ed. 2d 437 (1970); *Blanton v. North Las Vegas*, 489 U.S. 538, 109 S. Ct. 1289, 103 L. Ed. 2d 550 (1989), and *Lewis v. United States*, 518 U.S. 322, 116 S. Ct. 2163, 135 L. Ed. 2d 590 (1996). See generally 6 LaFave, Israel, King & Kerr, Criminal Procedure § 22.1(b), pp. 8-17 (4th

ed. 2015). In *Duncan*, which applied the Sixth Amendment's jury-trial provision to the states under the Fourteenth Amendment, the Court noted that "[s]o-called petty offenses were tried without juries both in England and in the Colonies and have always been held to be exempt from the otherwise comprehensive language of the Sixth Amendment's jury trial provisions," though "the boundaries of the petty offense category have always been ill-defined . . . ." 391 U.S. at 159, 160. The Court concluded that it did not have to determine "the exact location of the line" to decide *Duncan*, 391 U.S. at 161, but in *Baldwin*, it determined that "no offense can be deemed 'petty' . . . where imprisonment for more than six months is authorized." 399 U.S. at 69. Accordingly, a jury-trial right exists when the authorized penalty is more than 6 months. In our case, though, the maximum penalty *is* 6 months, so a jury trial is not required under that test.

But that doesn't end the analysis. In *Blanton*, the Court said that although we "presume" for purposes of the Sixth Amendment that an offense with a maximum prison term of 6 months or less is petty, that presumption may be rebutted. 489 U.S. at 542-43. A defendant will still be entitled to a jury trial if the offense carries statutory penalties *in addition to* the jail term that "are so severe that they clearly reflect a legislative determination that the offense is a 'serious' one." 489 U.S. at 538. Even so, the *Blanton* Court emphasized that "[p]rimary emphasis . . . must be placed on the maximum authorized period of incarceration," 489 U.S. at 542, and there has not yet been a case in which the Court found that an offense with a maximum authorized incarceration period of 6 months was a serious one so as to require a jury trial under the Sixth Amendment. In *Lewis*, the Court reaffirmed these rules, 518 U.S. at 326-27, and held that a defendant had no jury-trial right when charged with multiple petty offenses in a single prosecution, even though he could have received a total sentence of more than 6 months. 518 U.S. at 327-30.

In sum, then, we look primarily to the maximum authorized incarceration period set by the legislature for the offense. If it is no more than 6 months, then the defendant has no constitutional jury-trial right unless any extra statutory penalties are severe enough to

clearly show a legislative determination that the offense is a serious one.

We turn now to our case. The maximum punishment is incarceration for 6 months. K.S.A. 2015 Supp. 21-5414(b)(1). So the offense is presumed to be petty unless additional statutory penalties are severe enough to change the outcome.

The primary statute setting out penalties for this offense provides that the court can also fine the defendant from $200 to $500 or may order the offender to undergo a domestic-violence-offender assessment and follow its recommendations. K.S.A. 2015 Supp. 21-5414(b)(1). In addition, K.S.A. 2015 Supp. 21-6608(a) allows the court to impose up to 2 years of probation, in lieu of a jail sentence, in all misdemeanor cases; K.S.A. 2015 Supp. 21-6604(p) requires that the court order those convicted of domestic violence to "[u]ndergo a domestic violence offender assessment," comply with any recommendations, and pay the cost for the assessment.

These punishments are no more severe than ones the United States Supreme Court has found to correspond to petty offenses. In *Blanton*, in addition to any jail sentence, the offender had to pay a fine ranging from $200 to $1,000, automatically lost his or her driver's license for 90 days, and had to attend and pay for an alcohol-abuse-education course. 489 U.S. at 539-40. The Court held that these additional consequences didn't turn the otherwise-petty offense into a serious one for Sixth Amendment purposes. 489 U.S. at 543-45. Similarly, in *United States v. Nachtigal*, 507 U.S. 1, 113 S. Ct. 1072, 122 L. Ed. 2d 374 (1993), a defendant convicted of a DUI offense in a national park faced a maximum fine of $5,000, up to 6 months in prison, or (as an alternative to prison) up to 5 years on probation. Despite the high fine and long probation term, the Supreme Court held that the DUI was a petty offense because a fine and probation are "far less intrusive than incarceration." 507 U.S. at 5. The Court also noted that while a variety of probation requirements might be placed on the defendant, "discretionary probation conditions . . . do not approximate the severe loss of liberty caused by imprisonment for more than six months," 507 U.S. at 5, and thus do not make the offense a serious one for jury-trial purposes.

The penalties established by statute for Woolverton's offense are no more serious than those found in *Blanton* and *Nachtigal*. Accordingly, if we look only at the punishments directly established by statute for this offense, it is a petty offense, and Woolverton had no constitutional right to a jury trial.

But Woolverton argues that other statutes provide additional punishments that are so severe as to transform his offense from petty to serious. We do not find that any of these statutes increase the punishment for Woolverton's offense in a way that would affect his right to a jury trial:

- Woolverton notes that federal law prohibits domestic-violence offenders from purchasing firearms. See 18 U.S.C. § 922(g)(9) (2012). But the existence of a *federal* statute says nothing about how the Kansas Legislature views the offense, and we look to the punishments it has established to determine the seriousness of the offense. Woolverton has cited no case in which a court has considered the *combination* of federal and state statutory penalties to determine whether a defendant has a jury-trial right. Moreover, any limitation on Woolverton's ability to buy firearms is a collateral consequence of the conviction, not the direct punishment for it. Collateral consequences are not considered when determining whether a jury-trial right exists. See 6 LaFave, Israel, King & Kerr, Criminal Procedure § 22.1(b), p. 12 & n.48 ("[C]ollateral consequences do not count.") (citing cases). Applying this rule, the Nevada Supreme Court held that federal firearms restrictions did not convert Nevada's domestic-battery offense—punishable by up to 6 months in jail—from a petty offense to a serious one for jury-trial purposes. *Amezcua v. Eighth Judicial District Court*, 319 P.3d 602, 605 (Nev.) ("[R]estrictions on possession of a firearm and deportation . . . are collateral consequences of a conviction: they arise out of federal law, not the Nevada statute that proscribes first-offense domestic battery. [Citations omitted.]"), *cert. denied* 135 S. Ct. 59 (2014).

- • Woolverton cites several statutes that provide rights or services to victims of domestic violence. See K.S.A. 2015 Supp. 22-2307(b)(10) (requiring that law-enforcement officers provide information to domestic-violence victims about their rights and available resources); K.S.A. 2015 Supp. 44-1132 (protecting domestic-violence victims from retaliation by employers for taking time off to seek services or to participate in the prosecution of their cases). Serving and protecting victims does not increase the punishment to defendants.

- • Woolverton notes that Kansas law requires that officers arrest a person when they have probable cause to believe he or she has committed a domestic battery. See K.S.A. 2015 Supp. 22-2307(b)(1). While true, that doesn't increase the punishment beyond the 6-month limit; the time the defendant spends in jail before posting bond will count toward the eventual sentence.

- • Woolverton notes that K.S.A. 2015 Supp. 20-369 allows a court to assess a fee of up to $100 against a domestic-violence offender if the local judicial district has set up a fund to provide for domestic-violence programs. Even if we consider that fee to be a fine—and thus punishment of the defendant—it would simply raise the maximum possible fine for Woolverton's offense to $600, well under the fine amounts for offenses the Supreme Court found petty in *Blanton* ($1,000) and *Nachtigal* ($5,000).

Woolverton also argues generally that several other statutes or policies elevate the seriousness of domestic-violence cases: Prosecutors must adopt policies to effectively prosecute domestic violence, see K.S.A. 22-2309; significant public funds are spent to combat domestic violence; law-enforcement officers must file offense reports with the Kansas Bureau of Investigation for all domestic-violence calls, whether or not they make an arrest, see K.S.A. 2015 Supp. 22-2307(b)(11); and law-enforcement officers are encouraged or required to act on "lethality assessments" at the scene in domestic-violence cases. But while these facts show that we take domestic violence seriously as that term is commonly used, they do

not affect the analysis when determining whether a right to a jury trial exists under the Sixth Amendment. None of these statutes or policies increased Woolverton's punishment in any significant way.

Woolverton makes one final argument to support his claim of a constitutionally based jury-trial right: He notes that some felony sentences in Kansas can be shorter than 6 months. That's true—for a defendant with no significant criminal history, convicted of the lowest-level nondrug felony, the trial judge can choose a sentence of 5, 6, or 7 months. See K.S.A. 2015 Supp. 21-6804. But how other offenders are sentenced is not the focus in determining whether a defendant has a Sixth Amendment jury-trial right. Instead, we look to the maximum sentence allowed for a crime, not the sentence imposed. See *Lewis*, 518 U.S. at 326. The maximum sentence that can be imposed for Woolverton's offense, a first-time misdemeanor domestic battery, is 6 months. Neither that sentence length nor any other punishment the Kansas Legislature has adopted for this offense makes it a serious offense for jury-trial purposes.

Based on the analysis we've provided to this point in our opinion, we have concluded that Woolverton had no constitutionally based jury-trial right. We turn next to his argument that he was also denied his statutory right to a jury trial.

K.S.A. 22-3404(1) provides that "[t]he trial of misdemeanor cases shall be to the court unless a jury trial is requested in writing by the defendant not later than seven days after first notice of trial assignment is given . . . ." The right granted by statute is limited by the requirement that the defendant timely request it. Woolverton makes no claim that he requested a jury trial before his trial to a judge took place.

Woolverton contends that his failure to request the jury trial should be excused because no one told him he had that statutory right. In support of his claim that his case could not be tried to a court unless he had been told he had a jury-trial right and expressly waived that right, he cites to cases involving charges of more serious misdemeanors where the maximum possible sentence was 12 months, not 6. *E.g.*, *State v. Bell*, No. 110,550, 2014 WL 5801050 (Kan. App. 2014), *rev. denied* 301 Kan. 1047 (2015); *State v. Marshall*, No. 107,982, 2013 WL 3791689 (Kan. App. 2013). Thus, in

each of those cases, the defendant had a *constitutional* right to a jury trial. That's significant because a defendant must be told about his or her constitutional right to a jury trial before he or she may properly give up that right. See *State v. Lewis*, 301 Kan. 349, 376-77, 344 P.3d 928 (2015); *State v. Irving*, 216 Kan. 588, 589, 533 P.2d 1225 (1975). Here, though, Woolverton had *no* constitutional jury-trial right, and the statutory right only applies if the defendant makes a timely jury-trial request. Since Woolverton didn't make a jury-trial request, we find no violation of his statutory jury-trial right.

Our ruling should in no way be read to suggest that domestic violence is not a serious matter. Nor, we can be sure, does the State intend its argument in this case to make that suggestion. Domestic violence is a real, important, and serious problem, and many laws at the state and federal level attest to this. All we are saying here is that the penalties prescribed by the Kansas Legislature for this offense are within the category defined as petty for the purpose of determining whether a defendant has a constitutional right to a jury trial. Given those penalties, there is no constitutional right to a jury trial for this offense. Since Woolverton did not request a jury trial under the statutory provision, K.S.A. 22-3404(1), his case was properly tried to a judge sitting without a jury.

The district court's judgment is affirmed.