NOT DESIGNATED FOR PUBLICATION

No. 117,536

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JUSTIN MICHAEL RACE,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES E. PHELAN, judge. Opinion filed March 9, 2018. Affirmed.

*Catherine A. Zigtema*, of Zigtema Law Office LC, of Shawnee, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., STANDRIDGE and BRUNS, JJ.


PER CURIAM:  After trial to a judge, Justin Michael Race was convicted of domestic battery, a class B person misdemeanor. The district court sentenced him to 90 days in jail. On appeal, Race argues his conviction must be vacated because he was deprived of his constitutional and statutory right to a jury trial. Based on the crime charged, however, Race did not have a constitutional right to jury trial and he never requested a jury trial under Kansas statute; thus, Race's conviction and sentence are affirmed.

1

Race raises the issue of a right to a jury trial for the first time on appeal. Generally, issues not raised to the district court are not preserved for appeal. *State v. Cheffen*, 297 Kan. 689, 696, 303 P.3d 1261 (2013). But a new legal theory may be raised for the first time if consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). The right to a jury trial is a fundamental right under both the Sixth Amendment to the United States Constitution and sections 5 and 10 of the Kansas Constitution Bill of Rights. *State v. Bowers*, 42 Kan. App. 2d 739, 740, 216 P.3d 715 (2009). As such, we may consider Race's claim that he was denied a fundamental right to a jury trial even though he did not raise the issue below.

This court exercises unlimited review over issues of constitutional and statutory interpretation. See *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015); *State v. Bowen*, 299 Kan. 339, 354, 323 P.3d 853 (2014).

Although claiming he was deprived of his constitutional and statutory right to a jury trial with respect to a charge of class B misdemeanor domestic violence battery lodged against him, Race candidly acknowledges in his brief that an argument identical to the one he now makes was considered and rejected by this court in *State v. Woolverton*, 52 Kan. App. 2d 700, 701, 371 P.3d 941 (2016), *rev. denied* 306 Kan. 1331 (2017). Like Race, Woolverton was charged with a class B misdemeanor domestic violence offense under K.S.A. 2015 Supp. 21-5414 and convicted after a bench trial. Woolverton argued on appeal that he had a constitutional right to a jury trial under the Sixth Amendment and sections 5 and 10 of the Kansas Constitution Bill of Rights and a statutory right to a jury trial under K.S.A. 22-3404(1). But the court was not persuaded by Woolverton's arguments.

First, the court held that whether Woolverton had a constitutional right to trial by jury

2

"depends on whether the offense is categorized as a serious or a petty offense. If it's a serious offense, then he was entitled to a jury trial under the Sixth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights. If it's a petty offense, he has no constitutionally based jury-trial right, and his conviction stands." 52 Kan. App. 2d at 701.

The court explained that "[t]he terms 'serious offense' and 'petty offense' are terms of art, used in specific ways in decisions of the United States Supreme Court interpreting the Sixth Amendment." 52 Kan. App. 2d at 701. Relying on a long line of United States Supreme Court precedent, the court found that petty crimes or offenses punishable by no more than six months are not subject to the Sixth Amendment jury trial provision. *Woolverton*, 52 Kan. App. 2d at 701-02 (citing *Duncan v. Louisiana*, 391 U.S. 145, 159-61, 88 S. Ct. 1444, 20 L. Ed. 2d 491 [1968]; *Baldwin v. New York*, 399 U.S. 66, 90 S. Ct. 1886, 26 L. Ed. 2d 437 [1970]; *Blanton v. North Las Vegas*, 489 U.S. 538, 109 S. Ct. 1289, 103 L. Ed. 2d 550 [1989]; and *Lewis v. United States*, 518 U.S. 322, 116 S. Ct. 2163, 135 L. Ed .2d 590 [1996]). Noting that the Kansas Supreme Court interprets the right to jury trial under the Kansas Constitution identically to the United States Supreme Court's interpretation of the Sixth Amendment, the court further found that petty crimes or offenses punishable by no more than six months are not subject to the right of trial by jury under sections 5 and 10 of the Bill of Rights in the Kansas Constitution either. *Woolverton*, 52 Kan. App. 2d at 701 (citing *State v. Carr*, 300 Kan. 1, 56, 331 P.3d 544 [2014], *rev'd in part on other grounds* 136 S. Ct. 633 [2016]; *State v. Lawson*, 296 Kan. 1084, 1091, 297 P.3d 1164 [2013]). Finally, the court relied on the plain and unambiguous language of K.S.A. 22-3404(1) to find that the statutory right to a jury trial in a misdemeanor case depends on whether the defendant requests the jury trial within the time frame set out by statute. If no request is made, the defendant's statutory right to a jury trial is not violated when the case is tried to a judge sitting without a jury.

Applying the legal principles above to the facts presented, the *Woolverton* court ultimately held that the misdemeanor domestic battery offense with which the defendant

was charged—which was punishable by no more than six months in jail, a fine of up to $500, participation in and payment for a domestic violence offender assessment, and compliance with the assessment's recommendations—is a petty offense for which there is no federal or state constitutional right to a jury trial. The court further held the defendant did not have a statutory right to jury trial because he never requested a jury trial as required by K.S.A. 22-3404(1). 52 Kan. App. 2d at 706-07.

Race does not dispute that the issues decided in *Woolverton* are identical to the ones he raises or that the *Woolverton* court ruled against his current position on appeal. Rather, Race argues *Woolverton* was wrongly decided and urges this panel to depart from the court's holding in *Woolverton* for three reasons. First, he contends that the jury trial right under sections 5 and 10 of the Kansas Constitution Bill of Rights is broader than that right under the Sixth Amendment; thus, the federal serious/petty analysis applied in *Woolverton* does not apply here. Second, he argues that the *Woolverton* court improperly determined that the additional statutory penalties applicable to domestic violence offenses were insufficient to indicate the Legislature views those offenses as serious. Finally, he contends that *Woolverton* incorrectly analyzed the statutory jury trial right. We address each of Race's arguments in turn.

1. *Sections 5 and 10 of the Kansas Constitution Bill of Rights*

Race first argues *Woolverton* wrongly held that the Kansas Supreme Court has interpreted the jury trial right under the Kansas Constitution identically to the Sixth Amendment. See 52 Kan. App. 2d at 701. Race contends that Kansas courts have interpreted the Kansas Constitution to protect a broader jury trial right.

Section 10 of the Kansas Constitution Bill of Rights provides for a jury trial in "all prosecutions." Relying on *In re L.M.*, 286 Kan. 460, 186 P.3d 164 (2008), Race argues the Kansas Supreme Court has deemed it proper to construe the Kansas Constitution

4

broadly so that it applies to all criminal prosecutions, regardless of whether they would be considered "petty" or "serious" based on the maximum applicable sentence.

But *In re L.M.* did not hold that a defendant has a right to trial in every criminal matter. Rather, that case distinguished a jury trial right in criminal prosecutions as opposed to noncriminal prosecutions. In *In re L.M.*, the Kansas Supreme Court held that a juvenile offense under the revised Kansas Juvenile Justice Code (KJJC) is "akin to an adult criminal prosecution," and therefore a juvenile charged under the KJJC has a constitutional jury trial right. 286 Kan. 460, Syl. ¶ 1; see also *State, ex rel., v. Pinkerton*, 185 Kan. 68, Syl. ¶ 1, 340 P.2d 393 (1959) (bastardy proceeding did not entitle defendant to jury trial under Kansas Constitution); *State, ex rel., v. Herbert*, 96 Kan. 490, 152 P. 667 (1915) (same); but see *In re Rolfs, Petitioner*, 30 Kan. 758, 762, 1 P. 523 (1883) (whereas some state constitutions allow "summary convictions in petty offenses without appeal, . . . our constitution contains the further provision that *in all prosecutions* the accused shall be entitled to a speedy public trial by an impartial jury").

Kansas courts have repeatedly recognized that the jury trial right only applies to criminal offenses that carry a potential prison sentence of more than six months. For example, in *State v. Shannon*, 258 Kan. 425, 435-36, 905 P.2d 649 (1995), the Kansas Supreme Court held that "a jury trial is not required in a case of contempt for petty offenses, which are those carrying a sentence of six months or less." (citing *Codispoti v. Pennsylvania*, 418 U.S. 506, 94 S. Ct. 2687, 41 L. Ed. 2d 912 [1974]); see also *State v. Bell*, 258 Kan. 123, 128, 899 P.2d 1000 (1995) (where two separate petty offenses were not part of same act, maximum prison sentences could not be aggregated; because maximum sentence for each offenses was less than six months, defendant had no jury trial right); *State v. Johnson*, 46 Kan. App. 2d 387, Syl. ¶ 6, 264 P.3d 1018 (2011) ("The Sixth and Fourteenth Amendments to the United States Constitution, as well as §§ 5 and 10 of the Kansas Constitution Bill of Rights, guarantee a criminal defendant the right to a jury trial. The constitutional right to a jury trial is triggered when the defendant is facing

potential imprisonment for the offense exceeding 6 months."); *State v. Sykes*, 35 Kan. App. 2d 517, 523, 132 P.3d 485 (2006) ("[T]he defendant in a misdemeanor case also has a constitutional right to a jury trial found in the Sixth and Fourteenth Amendments to the United States Constitution and § 5 of the Kansas Constitution Bill of Rights. The constitutional right to a jury trial is triggered when the defendant is facing potential imprisonment for the offense exceeding 6 months.").

And, as *Woolverton* noted, Kansas courts generally interpret Kansas constitutional provisions identically with their federal counterparts. See *Lawson*, 296 Kan. at 1091; see also *Carr*, 300 Kan. at 56 (noting that Kansas has not previously analyzed section 10 of the Kansas Constitution Bill of Rights differently than Sixth and Fourteenth Amendments to the United States Constitution). This court is duty bound to follow Kansas Supreme Court precedent where there is no indication that the Supreme Court intends to depart from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). Thus, we will not depart from *Woolverton* based on Race's proposed interpretation of the Kansas Constitution.

2. *Additional statutory penalties*

Although finding misdemeanor domestic battery to be a petty offense because it is an offense punishable by no more than six months in jail, the *Woolverton* noted that such a finding is a presumption that can be rebutted. 52 Kan. App. 2d at 702. Specifically, the court contemplated the presumption could be rebutted if the Legislature included additional statutory penalties in what would be an otherwise petty offense in order to make clear its intention to treat the offense as a serious crime. The court ultimately held, though, that the additional statutory penalties for misdemeanor domestic battery fail to clearly establish an intention by the Legislature to treat the offense as a serious crime. 52 Kan. App. 2d at 706. In so holding, the court noted that the United States Supreme Court

6

has never found that an offense punishable by no more than six months in jail is a serious offense, despite other additional penalties. 52 Kan. App. 2d at 702-03.

Notwithstanding the holding in *Woolverton*, Race contends the additional statutory penalties applicable to a domestic violence offense indicate the Legislature views the offense as serious and not petty. Although Race's argument is identical to the one rejected by the court in *Woolverton*, we will briefly discuss the factors relied on by Race in asking this court to depart from *Woolverton*.

First, Race argues that he is subject to additional penalties under federal statutes, such as 18 U.S.C. § 922(g)(9) (2012) (prohibiting domestic violence offenders from purchasing firearms) and 8 U.S.C. § 1227(a)(2)(E) (2012) (nonnatural citizen deportable if convicted of certain crimes of domestic violence). Race argues that this court should consider federal law because "a large number of procedural protections and punishments for domestic violence offenses were imposed in order to obtain federal grant money or comply with federal regulations from the Violence Against Women Act." But the reason courts look to additional statutory penalties is to determine whether they signal the "legislature's view of the seriousness of an offense." *Blanton*, 489 U.S. at 542-43. As the *Woolverton* court explained, "the existence of a *federal* statute says nothing about how the Kansas Legislature views the offense, and we look to the punishments it has established to determine the seriousness of the offense." 52 Kan. App. 2d at 704.

Second, Race contends that domestic violence offenders are separately punished from other class B offenses in the Kansas statutes. See K.S.A. 2017 Supp. 21-5414 (mandatory minimum sentences and counseling requirements); K.S.A. 2017 Supp. 20-369 (additional fee of up to $100 against domestic offender). Separate statutory authority does not indicate how the Legislature views the crime; the court must analyze the specific punishments to determine their seriousness. The *Woolverton* court considered the additional statutory punishments applicable to domestic battery, including the maximum

fine of $500 and the requirements that the offender undergo a domestic violence offender assessment, follow its recommendations, and pay the cost of the assessment. 52 Kan. App. 2d at 703. The *Woolverton* court held that even if the court were to consider the $100 fee in K.S.A. 2015 Supp. 20-369 to be a fine, it would simply raise the possible fine to $600, which does not exceed other fines the United States Supreme Court has determined to be petty. 52 Kan. App. 2d at 705.

Third, Race notes that victims of domestic violence are offered special protections. See K.S.A. 2017 Supp. 44-1132 (protecting domestic violence victims from retaliation by employers for taking time off to seek services or to participate in prosecution of their cases). But "[s]erving and protecting victims does not increase the punishment to defendants." *Woolverton*, 52 Kan. App. 2d at 705.

Race also asks this court to consider several additional policies that he contends indicate the seriousness of domestic violence cases: prosecutors must adopt policies to effectively prosecute domestic violence, see K.S.A. 22-2309; district and magistrate courts specialize in the handling of domestic violence cases; district attorney's offices have specialized domestic violence sections; significant public funds are spent to combat domestic violence; and nonprofit organizations devote significant efforts to educating the public about domestic violence. "But while these facts show that we take domestic violence seriously as that term is commonly used, they do not affect the analysis when determining whether a right to a jury trial exists under the Sixth Amendment." *Woolverton*, 52 Kan. App. 2d at 705-06.

Finally, Race notes that class B domestic battery is a person misdemeanor, and person misdemeanors in an offender's criminal history can accumulate to enhance an offender's sentence. K.S.A. 2017 Supp. 21-6810; K.S.A. 2017 Supp. 21-6811. He contends that it is incongruous for three class A nonperson misdemeanors—which are punishable by up to one year in prison and thus entail the jury trial right—do not

8

accumulate in the same manner. But the possibility of a conviction accumulating with other convictions in an offender's criminal history and affecting a future sentence does not increase the offender's punishment for the current offense.

Upon review of *Woolverton*'s reasoning and the authorities cited therein, this court finds no reason to depart from *Woolverton*'s conclusion that the additional statutory penalties applicable to a class B misdemeanor domestic violence offense do not indicate that the Legislature intended that it be the kind of "serious" offense for which a jury trial is required. As noted by the court in *Woolverton*:

> "Our ruling should in no way be read to suggest that domestic violence is not a serious matter. Nor, we can be sure, does the State intend its argument in this case to make that suggestion. Domestic violence is a real, important, and serious problem, and many laws at the state and federal level attest to this. All we are saying here is that the penalties prescribed by the Kansas Legislature for this offense are within the category defined as petty for the purpose of determining whether a defendant has a constitutional right to a jury trial. Given those penalties, there is no constitutional right to a jury trial for this offense." 52 Kan. App. 2d at 707.

3. *Statutory jury trial right*

In his final argument on appeal, Race contends that *Woolverton* incorrectly analyzed the statutory jury trial right. K.S.A. 22-3404(1) provides that "[t]he trial of misdemeanor cases shall be to the court unless a jury trial is requested in writing by the defendant not later than seven days after the first notice of trial assignment is given." In other words, the statutory right is limited by the requirement that the defendant timely request it. Here, Race never requested a jury trial, so he did not have a statutory jury trial right.

Similar to the defendant in *Woolverton*, Race argues that because he was not notified of his right to a jury trial, he had no opportunity to exercise his statutory right. Race argues that the district court was required to notify him of his jury trial right and obtain a knowing waiver, citing *State v. Irving*, 216 Kan. 588, 533 P.2d 1225 (1975). In *Irving*, the defendant was charged with an offense that carried a maximum prison sentence of one year, and therefore had a *constitutional* right to jury trial. The *Irving* court held that where a defendant has a constitutional right, waiver of a jury trial must be strictly construed. 216 Kan. at 589. Because Race did not have a constitutional jury trial right, *Irving* does not apply here. See *Woolverton*, 52 Kan. App. 2d at 707 ("Woolverton had *no* constitutional jury-trial right, and the statutory right only applies if the defendant makes a timely jury-trial request.").

Race also contends that K.S.A. 22-3404 does not provide the district judge with discretion to deny a jury trial upon request, which "indicates that the defendant has such right *ab initio*." It is his position that such an "intrinsic" right demands that he be provided notice. But the plain language of the statute does not support Race's position. The statute straightforwardly explains that a defendant charged with a misdemeanor only gets a jury trial if he or she timely requests one. See *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016) (when statute is plain and unambiguous, court should refrain from reading into statute more than is readily found in its words); see also *State v. Green*, No. 115,005, 2017 WL 658231, at *3 (Kan. App. 2017) (unpublished opinion) ("Green did not have a constitutional right to a jury trial. Since she made no timely written request for a jury trial, we find no violation of her statutory right.").

Race did not have a constitutional right to a jury trial and did not timely request a jury trial under K.S.A. 22-3404(1). For these reasons, his conviction is affirmed.

Affirmed.