No. 127,829

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant/Cross-appellee*,

v.

BRIAN MATTHEW HUGHES,
*Appellee/Cross-appellant*.

SYLLABUS BY THE COURT

1.

Under K.S.A. 21-6810(d)(9), prior convictions of a crime defined by a statute that has since been determined unconstitutional by an appellate court shall not be used for criminal history scoring purposes. K.S.A. 21-6810(d)(9) applies whenever an appellate court has ruled a statute unconstitutional, even if that ruling may no longer be good law.

2.

When considering departures granted under the revised Kansas Sentencing Guidelines Act, appellate review is limited to determining whether the sentencing court's findings of fact and reasons justifying a departure are supported by the evidence in the record and constitute substantial and compelling reasons for departure.

Appeal from Sedgwick District Court; DAVID KAUFMAN, judge. Submitted without oral argument. Opinion filed December 19, 2025. Affirmed.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellant/cross-appellee.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellee/cross-appellant.

1

Before ARNOLD-BURGER, P.J., MALONE and BOLTON FLEMING, JJ.

PER CURIAM:  The State appeals the district court's sentencing order for Brian Matthew Hughes following his convictions of one count of aggravated offender registration violation and two counts of offender registration violation. The State claims the district court erred by not including Hughes' four prior criminal threat convictions to determine his criminal history score. The State also claims the district court erred by granting Hughes a downward durational departure. Hughes cross-appeals, asserting the district court erred by denying his request for a dispositional departure to probation. For the reasons explained below, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Due to a 2007 conviction for aggravated assault with a deadly weapon, Hughes is required to register as a violent offender under the Kansas Offender Registration Act (KORA). In 2022, the State charged Hughes with one count of aggravated offender registration violation and two counts of offender registration violation. The State alleged that Hughes had failed to register in February, May, and August of that year.

Hughes entered a plea agreement with the State. Under the agreement, in exchange for Hughes pleading guilty to the three counts as charged, the State would recommend concurrent sentences and that Hughes be granted both a durational and dispositional departure. The agreement specified that the State was not bound by its terms if Hughes violated bond conditions or failed to appear in court. The district court accepted Hughes' guilty pleas and released him on his own recognizance (OR) bond pending sentencing.

After the plea hearing, Hughes' counsel moved for a dispositional departure to probation, arguing he had accepted responsibility, had never committed any violent crimes, that he was recovering from a substance abuse problem, and programs outside of

2

prison would be more beneficial than prison. Alternatively, he requested a durational departure due to the age of some of his prior convictions. The motion requested "a term of probation for 36 months with a 50 month underlying sentence."

Hughes failed to appear for his scheduled sentencing, so the district court forfeited his bond and issued an arrest warrant. He would not be apprehended for nearly a year.

On April 29, 2024, the parties convened for Hughes' sentencing. The presentence investigation (PSI) report listed four prior criminal threat convictions, which it scored as person felonies, and calculated Hughes' criminal history score as A. According to the PSI report, Hughes' presumptive sentence for his primary crime of conviction, aggravated offender registration violation, was 221/233/247 months' imprisonment.

Hughes challenged the inclusion of these criminal threat convictions in his criminal history score under the ruling in *State v. Boettger*, 310 Kan. 800, 823, 450 P.3d 805 (2019), holding the reckless portion of the Kansas criminal threat statute was unconstitutionally overbroad under the First Amendment to the United States Constitution. The State argued that Hughes' criminal threat convictions should be included because *Boettger* had been effectively overruled by the United States Supreme Court in *Counterman v. Colorado*, 600 U.S. 66, 69, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023). The district court sided with Hughes and found his criminal history score as D. The presumptive sentence for the primary crime was 89/96/100 months' imprisonment.

Hughes asked the district court to grant his motion for a durational and dispositional departure. The State responded that it disagreed with the district court's criminal history score and believed Hughes should receive a 247-month sentence based on a score of A. But applying a criminal history score of D, the State requested the district court to sentence Hughes to the aggravated number on each count to run consecutively, for a controlling term of 168 months' imprisonment.

3

The district court granted Hughes a durational departure for a controlling term of 50 months' imprisonment but denied his request for a dispositional departure. The district court cited four departure factors: "One is the acceptance of responsibility; second point on the motion was resolving this case by plea and saving the court time and money, [third] technical nature of the violation; and the last one was age of the prior conviction for offender registration violation." The State appealed the district court's sentencing order. Hughes cross-appealed the denial of his motion for a dispositional departure.

### DID THE DISTRICT COURT ERR BY EXCLUDING HUGHES' PRIOR CRIMINAL THREAT CONVICTIONS FROM HIS CRIMINAL HISTORY SCORE?

The State first claims the district court erred by excluding Hughes' four prior criminal threat convictions from his criminal history score. But before taking up this issue, we will address a claim made by Hughes that the State has failed to comply with Kansas Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36), thus precluding our review of the issues the State has raised in this appeal.

*Did the State fail to comply with Supreme Court Rule 6.02(a)(5), thus precluding appellate review?*

Hughes argues the State's brief failed to comply with Kansas Supreme Court Rule 6.02(a)(5) by not providing a pinpoint citation to where the issues it is raising were raised and ruled on at the district court. He argues this court should decline to reach the merits of the State's arguments on appeal. The State did not respond to Hughes' claim. An appellate court "exercise[s] plenary review over whether an issue is properly preserved for appellate review." *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018).

Supreme Court Rule 6.02(a)(5) provides that every issue raised in an appellate brief must begin with a citation to the applicable standard of review and a pinpoint citation to where the issue was raised and then ruled on. If the issue was not raised below,

4

the appellant must explain why the issue is properly before the court. In *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015), the Kansas Supreme Court cautioned that Rule 6.02(a)(5) is to be strictly enforced and an appellant who fails to comply with it risks having the argument deemed waived and abandoned. The question then is whether the State provided citations to where its sentencing issues were raised and ruled on.

Hughes is correct that Supreme Court Rule 6.02(a)(5) mandates:  "*Each issue must begin with . . .* a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on." (Emphasis added.) Although the State did not include a specific section on preservation for each issue it raises in its brief, its brief includes record citations where it argued that Hughes' prior criminal threat convictions should be included in his criminal history and opposed Hughes' departure motion, as well as where those issues were ruled on. These pinpoint citations appear in the State's facts section.

The State is not relying on any preservation exceptions to raise new issues, so there was no need for it to explain why the issues are properly before the court. The sole error the State made is the location of the pinpoint citations. But the issues the State is appealing *were* raised and ruled on in district court, and the State's brief includes the record citations in the facts section of the brief. Hughes cites many cases where our court declined to address an issue because of the appellant's failure to comply with Supreme Court Rule 6.02(a)(5)—but in all these cases the appellant was trying to raise a new issue for the first time on appeal. That is not what is happening here. Hughes has not cited any case in which an appellate court has found that an issue is not preserved merely because pinpoint record citations were included in the wrong section of a brief.

The purpose of the preservation rules is to encourage litigants to fully present their cases to the district court, so that all issues are tested by the adversarial process. This process allows the district court to set forth the facts and decide the law in dispute and ensures fundamental fairness in the proceedings. Parties should be given the chance to

5

respond to all arguments made and present evidence to support their respective positions. Because the State presented the arguments it raises on appeal before the district court, there are no concerns about procedural fairness. The State did cite to the portions of the record where the issues were raised and ruled on, albeit in the wrong section of its brief. This violation of Supreme Court Rule 6.02(a)(5) does not preclude appellate review.

*Did the district court err in determining Hughes' criminal history score?*

The State claims the district court erred in calculating Hughes' criminal history score by not counting his prior convictions for criminal threat as person felonies. This is a sentencing issue the State can appeal. See K.S.A. 21-6820(e)(2). The State's argument focuses on the validity of the Kansas Supreme Court's ruling in *Boettger*, in light of the United States Supreme Court's decision in *Counterman*.

The State spends much of its brief explaining why *Boettger* was wrongly decided, based on the analysis in *Counterman*, and then emphasizing that the United States Supreme Court's interpretation of the federal Constitution is controlling. There is no question the United States Supreme Court is the final arbiter of the federal Constitution. See, e.g., *State v. Lawson*, 296 Kan. 1084, Syl. ¶ 1, 297 P.3d 1164 (2013) ("The United States Supreme Court's interpretation of the United States Constitution is controlling upon and must be followed by state courts."). And this court is duty bound to follow controlling United States Supreme Court precedent. *Lawson*, 296 Kan. 1084, Syl. ¶ 1.

Hughes maintains the district court correctly excluded his prior criminal threat convictions for two reasons: First, he asserts that K.S.A. 21-6810(d)(9) precludes reckless criminal threat convictions from being included in a criminal history score because the statute was determined to be unconstitutional—regardless of whether that determination was later effectively overruled by the United States Supreme Court. Second, he asserts the State failed to prove that his convictions were solely based on the

6

intentional form of criminal threat and thus did not meet its burden to prove the convictions should be counted as person felonies in his criminal history score.

Resolution of this issue requires this court to interpret K.S.A. 21-6810(d)(9), which provides that "[p]rior convictions of a crime defined by a statute *that has since been determined unconstitutional* by an appellate court shall not be used for criminal history scoring purposes." (Emphasis added.) An appellate court exercises unlimited review over claims involving the interpretation of statutes. *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024). When, as here, the defendant challenges their criminal history score at sentencing, the State bears the burden of proving the defendant's criminal history score by a preponderance of the evidence. K.S.A. 21-6814(a)-(c).

This issue is now controlled by *State v. Smith*, 320 Kan. 62, 90-91, 563 P.3d 697 (2025), decided by the Kansas Supreme Court after the State filed its brief. Smith argued that, under K.S.A. 21-6810(d)(9), his prior criminal threat conviction should not have been included in his criminal history score, regardless of whether *Counterman* had effectively overruled *Boettger*. The Kansas Supreme Court agreed, explaining:

> "K.S.A. 21-6810(d)(9) provides that '[p]rior convictions of a crime defined by a statute that has since been determined unconstitutional by an appellate court shall not be used for criminal history scoring purposes.' As the majority recognized in *State v. Phipps*, 63 Kan. App. 2d 698, 711, 539 P.3d 227 (2023), *rev. granted* 318 Kan. 1089 (2024), a 'literal reading' of K.S.A. 21-6810(d)(9) implies that reckless criminal threat convictions can never be included in a criminal history score 'because at one point in time, the Kansas Supreme Court determined that the reckless criminal threat statute violated the First Amendment.'
>
> "We now acknowledge as correct this 'literal reading.' In matters of statutory interpretation, our prime directive requires us to give effect to the Legislature's intent, if we can discern it. *Bruce v. Kelly*, 316 Kan. 218, 224, 514 P.3d 1007 (2022). Where the Legislature's language is plain and unambiguous, our analysis ends—regardless of public policy considerations or canons of construction. E.g., *Woessner v. Labor Max Staffing*,

312 Kan. 36, 44-45, 471 P.3d 1 (2020). But see *Bruce*, 316 Kan. at 224 ('even when the language of the statute is clear, we must still consider various provisions of an act *in pari materia* to reconcile and bring those provisions into workable harmony, if possible').

"Our Legislature's direction was clear. If a prior conviction arose under a statute 'that has since been determined unconstitutional by an appellate court,' it cannot be counted in a criminal history score. Nothing in the plain language of the statute qualifies this limitation by considering *subsequent repudiations* of an appellate court's holding that a statute is unconstitutional." *Smith*, 320 Kan. at 90-91.

In short, the *Smith* court found that the plain language of K.S.A. 21-6810(d)(9) asks only whether an appellate court has ruled a statute unconstitutional—not whether that ruling remains good law. Because the Kansas Supreme Court found that the portion of K.S.A. 2018 Supp. 21-5415 criminalizing reckless criminal threat was unconstitutional in *Boettger*, it was "irrelevant" whether that decision was effectively overruled by *Counterman*. *Smith*, 320 Kan. at 91. This court is duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017).

As noted above, because Hughes challenged his criminal history score at sentencing, the State bore the burden of proving that his criminal threat convictions arose under the portion of the statute that had not been declared unconstitutional—that is, that his convictions were for intentional criminal threat. But the State presented no evidence to try to carry this burden, instead focusing—as it does on appeal—on whether *Counterman* overruled *Boettger*. Because the State failed to carry its burden to establish that Hughes' convictions were for intentional criminal threat, the district court correctly excluded those convictions from Hughes' criminal history score.

## DID THE DISTRICT COURT ERR BY GRANTING A DOWNWARD DURATIONAL DEPARTURE?

The State next claims the district court erred by granting Hughes a downward durational departure. More specifically, the State asserts the decision to grant Hughes a downward durational departure was an abuse of discretion because it was based on errors of fact and law. The State contends the district court's legal error was its miscalculation of Hughes' criminal history. And the State maintains that the various departure factors cited by the court are not supported by the record. Hughes responds that the district court did not abuse its discretion because (1) it correctly scored his criminal history and (2) the departure factors it relied on are supported by the record.

Departure sentences are subject to appeal by the defendant or the State. K.S.A. 21-6820(a). This court reviews a district court's departure decision for abuse of discretion. *State v. Morley*, 312 Kan. 702, 711, 479 P.3d 928 (2021). An abuse of discretion occurs "when the judicial action is (1) based on an error of fact, (2) based on an error of law, or (3) unreasonable." 312 Kan. at 710. The party asserting an abuse of discretion has the burden of showing it. *State v. Keys*, 315 Kan. 690, 708, 510 P.3d 706 (2022).

When considering departures granted under the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-6801 et seq., appellate review is limited to determining "whether the sentencing court's findings of fact and reasons justifying a departure:  (1) [a]re supported by the evidence in the record; and (2) constitute substantial and compelling reasons for departure." K.S.A. 21-6820(d). Moreover, when analyzing departures from a presumptive sentence, appellate courts follow a three-step framework to determine:  (1) whether the court's reliance on a nonstatutory factor, if any, was guided by an erroneous legal conclusion using an unlimited standard of review; (2) whether substantial competent evidence supported the factual finding that the factor existed, i.e., an error of fact; and (3) whether a reasonable person would have taken the view adopted by the district court. *Morley*, 312 Kan. at 711.

9

Generally, a district court must impose the presumptive sentence under the KSGA "unless the judge finds substantial and compelling reasons to impose a departure sentence." K.S.A. 21-6815(a). "The term 'substantial' in the sentencing departure context means something that is real, not imagined, and of substance, not ephemeral." *Morley*, 312 Kan. 702, Syl. ¶ 3. "A compelling reason is one that *forces* a court—by the case's facts—to abandon the status quo and venture beyond the presumptive sentence." 312 Kan. at 714. When a district court grants a departure, the judge must state the substantial and compelling reasons on the record at the time of sentencing. K.S.A. 21-6815(a).

Finally, "[w]hen even one factor relied upon by the sentencing court is substantial and compelling, the departure sentence should be upheld. Conversely, each individual factor, standing alone, need not be sufficient to justify the departure if the reasons collectively constitute a substantial and compelling basis for departure." *State v. Bird*, 298 Kan. 393, 398, 312 P.3d 1265 (2013).

As explained above, the district court did not err in calculating Hughes' criminal history score. The language in K.S.A. 21-6810(d)(9), along with the State's failure to prove that Hughes' convictions were for intentional criminal threat, precluded their inclusion in his criminal history score. Thus, the State's argument that the district court's departure decision was based on an error of law is without merit.

Turning to the State's argument that the district court's decision was based on errors of fact, the State contends the record does not support the factors the district court found to constitute substantial and compelling reasons for the departure. The district court listed four departure factors: Hughes' acceptance of responsibility, his decision to resolve the case via a plea, the technical nature of his violation, and the age of his prior registration violation conviction. While none of these factors are in the nonexclusive list in K.S.A. 21-6815, the State "takes no issue with any of the district court's bases being legally permissible." Thus, this court must simply determine if evidence in the record

10

supports the factors and, if so, whether they could have led a reasonable judge to conclude that they warranted a departure. See *Morley*, 312 Kan. at 711.

The record supports each of the factors cited by the district court. Hughes accepted responsibility for his failure to register by entering his guilty plea to all the State's charges. And by forgoing a trial, he saved the time and resources of the judicial system. The State argues this factor is offset by Hughes' failure to appear at his scheduled sentencing. But while this conduct cannot be condoned, it does not change the fact that Hughes saved judicial resources by entering a plea. The technical nature of the violation factor is less clear. The parties treat this to mean that the offense was minor and the degree of harm was less than typical. As Hughes points out, rather than being a typical offense where the offender affirmatively acts, KORA punishes those who fail to act. Hughes failed to register in person three times in 2022, despite the fact he had been registering in Sedgwick County since 2009. And there was no allegation that any of the information he was required to provide under KORA changed during the time he failed to register. Even the State acknowledges that the technical nature of Hughes' violation "is a truism as offender registration is a civil regulatory scheme." Finally, as for the age of Hughes' prior offender registration violation conviction, the PSI report shows that his one prior offender registration violation conviction occurred in 2010, nearly 14 years before his sentencing in the present case. The district court's finding regarding the age of Hughes' prior offender registration violation conviction is supported by the record.

As the district court's findings are supported by the record, the crux of the State's argument appears to be that the district court did not properly weigh these various factors when determining whether there were substantial and compelling reasons for a departure—that is, the district court's decision was unreasonable. When looking at the factors considered by the district court, it cannot be said that no reasonable judge would agree with its decision. The district court attentively considered the mitigating factors presented in Hughes' departure motion—his acceptance of responsibility, his decision to

11

resolve the case via a plea, the technical nature of his violation, and the age of his prior registration violation conviction. As for the 50-month term, the district court explained it was half the aggravated number in the grid box for Hughes' primary crime with a criminal history score of D. A reasonable person could agree with the district court's decision based on the information presented at sentencing. The State fails to show the district court abused its discretion by granting Hughes a durational departure.

DID THE DISTRICT COURT ERR BY DENYING HUGHES A DISPOSITIONAL DEPARTURE?

In his cross-appeal, Hughes claims the district court abused its discretion by denying him a dispositional departure to probation. The State maintains the district court appropriately exercised its discretion by denying Hughes probation. Although appellate courts usually lack jurisdiction to consider challenges to the denial of a departure motion, Hughes can appeal here because the district court granted the durational departure. K.S.A. 21-6820(a); *State v. Looney*, 299 Kan. 903, 908, 327 P.3d 425 (2014).

The same standard of review used to evaluate the State's challenge to the district court's grant of a durational departure applies to Hughes' challenge of the court's decision denying him a dispositional departure. This court must determine whether the court's decision constituted an abuse of discretion. *Morley*, 312 Kan. at 711. While the burden was on the State to show the district court abused its discretion in granting Hughes the durational departure, the burden is now on Hughes to show the district court abused its discretion in denying the dispositional departure. *Keys*, 315 Kan. at 708.

As discussed above, Hughes presented evidence to support several of the mitigating factors he argued in his departure motion. But the Kansas Supreme Court has repeatedly held that the presence of mitigating factors does not require a sentencing judge to impose a lesser sentence. See, e.g., *State v. Fowler*, 315 Kan. 335, 339-40, 508 P.3d 347 (2022) (collecting cases). The district court considered all the factors and

circumstances Hughes raised in his motion for a departure to probation. While Hughes presented substantial and compelling reasons to support a durational departure, those same reasons did not necessarily warrant a dispositional departure. As the State points out, Hughes failed to appear for his sentencing after being released on an OR bond and was not apprehended for nearly a year. The district court noted Hughes' behavior at sentencing, explaining that Hughes was apparently aware of the warrant for his arrest and still failed to appear for sentencing. This conduct does not bode well for someone who wants to be granted probation. A reasonable person could agree with the district court's decision to deny Hughes probation. Hughes fails to show the district court abused its discretion by denying his request for a dispositional departure to probation.

Affirmed.

***

MALONE, J., concurring: *State v. Smith*, 320 Kan. 62, 90-91, 563 P.3d 697 (2025), holds that under K.S.A. 21-6810(d)(9), a prior conviction of a crime defined by a statute that has since been determined unconstitutional by an appellate court shall not be used for criminal history scoring purposes. Thus, it is irrelevant whether a subsequent appellate court reverses or repudiates an appellate court's holding that a statute is unconstitutional. I have no problem with the holding in *Smith*. K.S.A. 21-6810(d)(9) says what it says. But the application of K.S.A. 21-6810(d)(9) concerning Kansas criminal threat convictions causes problems for sentencing courts and needs a legislative fix.

Under the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-6801 et seq., a defendant's sentence depends on the severity of the crime of conviction and the defendant's criminal history score. See K.S.A. 2024 Supp. 21-6804(d). For the sentencing scheme to work as it should, all prior felony convictions that are valid should be counted

13

to determine the defendant's criminal history score. See K.S.A. 21-6810(d)(2) (all prior adult felony convictions, including expungements, will be considered and scored).

In *State v. Boettger*, 310 Kan. 800, 823, 450 P.3d 805 (2019), our Supreme Court held the reckless portion of the Kansas criminal threat statute was unconstitutionally overbroad under the First Amendment to the United States Constitution. Since that ruling, lower courts in Kansas have struggled with scoring prior criminal threat convictions for criminal history purposes. The problem is compounded by the fact that the proscription against an intentional criminal threat and the proscription against a reckless criminal threat are included in the same subsection of the statute. See K.S.A. 21-5415(a)(1). When a defendant's prior criminal threat conviction is included in a presentence investigation (PSI) report, it is impossible for the sentencing court to tell only from the PSI report whether the prior criminal threat conviction is based on the intentional version of the offense or on the unconstitutional reckless version of the offense. More often than not, an examination of charging documents and journal entries of conviction still does not settle the issue. Substantial judicial resources and countless hours of work by prosecutors and defense attorneys have been spent trying to resolve issues caused by the problem.

None of it should have been necessary. A conviction for making a reckless criminal threat does not violate the First Amendment to the United States Constitution. The United States Supreme Court has now said so. See *Counterman v. Colorado*, 600 U.S. 66, 69, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023) (holding the First Amendment requires proof of a defendant's subjective understanding of the threatening nature of a statement to be punished as a crime, but a mental state of recklessness is sufficient to establish a true threat). The Kansas criminal threat statute, including the reckless disregard portion of the statute, would pass First Amendment constitutional muster under *Counterman*. See K.S.A. 21-5202(j) (defining recklessly under the Kansas criminal code with the same common-law meaning subscribed to the term in *Counterman*).

14

This brings us back to the necessary legislative fix. In 2025, a bill was introduced in the Kansas Legislature to amend K.S.A. 21-6810(d)(9) with the following language:

> "Prior convictions of a crime defined by a statute that has since been determined unconstitutional by an appellate court shall not be used for criminal history scoring purposes *unless the basis of the determination of unconstitutionality by the appellate court is later overruled or reversed by an order or opinion of the supreme court of the state of Kansas or the United States supreme court.*" H.B. 2401, § 1 (2025).

H.B. 2401 failed to pass, but a similar measure should be considered in the next legislative session to address this issue—at least going forward. I endorse no particular language for any bill; that decision is for the Kansas Legislature to make.

There should be no First Amendment concerns about the constitutionality of a defendant's conviction under the Kansas criminal threat statute. Thus, there should be no need for Kansas courts to continue struggling to decide, for criminal history scoring purposes, whether a defendant's prior Kansas criminal threat conviction was based on intentional or reckless conduct. Amending K.S.A. 21-6810(d)(9) would resolve the *Boettger/Counterman* situation and how to score Kansas criminal threat convictions for sentencings that occur after the effective date of the amendment. In that regard, it should be noted that under the KSGA, a defendant's criminal history is determined at the sentencing hearing by the sentencing judge. K.S.A. 21-6814(a). It is *not* fixed for sentencing purposes as of the date the offender commits the crime. See K.S.A. 21-6810(a).